**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCUS JONES, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HENRY H. OTTENS MFG. CO., INC. | : | |
| d/b/a OTTENS FLAVORS, and | : | |
| CHUCK JONES, | : | |
| Defendants. | : | NO. 11-911 |
| | : | |

**MEMORANDUM RE: DEFENDANTS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

**Baylson, J.**                                                          **March 8, 2012**

**I.      Introduction**

Plaintiff Marcus Jones ("Plaintiff"), an African-American male, brings this action under

42 U.S.C. § 1981 for retaliation (Count I) and racially discriminatory termination and hostile

work environment (Count II) against his former employer Defendant Henry H. Ottens

Manufacturing Company ("Ottens") and the Ottens Manufacturing Operations Manager Chuck

Jones (together, "Defendants"). Compl. ¶¶ 7-8, 11, 29-36.  Presently before the Court is

Defendants' motion for partial summary judgment based on the doctrine of after-acquired

evidence (ECF No. 20).  Defendants contend that Plaintiff's remedies should be limited to back

pay from the date of termination to the date when, during discovery in this case, Defendants

learned Plaintiff had been convicted of a crime (which he did not disclose on his employment

application).

Defendants filed their Motion on October 31, 2011 (ECF No. 20).  Plaintiffs responded

on November 14, 2011 (ECF No. 21).  Defendants filed a reply brief on November 23, 2011

(ECF No. 23).

As described below, the Court will DENY the Motion because there is a genuine dispute

of material fact as to whether Defendants would have terminated Plaintiff based on his

undisclosed prior conviction.

**II.     Factual Background**

The following pertinent facts are undisputed.[1] Ottens manufactures flavorings for food

and other products for human or animal consumption. Defs. SUF ¶ 1; Pl. SUF ¶ 1. In May 2009,

the temporary agency Aerotek assigned Plaintiff to Ottens. Defs. SUF ¶ 4; Pl. SUF ¶ 4. As part of

his transition to later full-time employment, Plaintiff filled out the Ottens employment

application. Defs. SUF ¶ 5; Pl. SUF ¶ 5. The application asked whether the applicant had "ever

been convicted of a crime or felony." Defs. SUF ¶ 8. Plaintiff checked the "no" box. Defs. SUF ¶

8; Pl. SUF ¶ 8; Defs. Ex. 3 at 1. A number of certifications preceded the application's signature

line, including the following pertinent paragraph:

> I certify that the statements made in this application are true and
> correct to the best of my knowledge and that any false information
> or misrepresentation contained herein will disqualify me from
> employment with Ottens Flavors, and, if hired by Ottens Flavors,
> will constitute immediate grounds for dismissal of my
> employment.

Defs. SUF ¶¶ 6-7; Pl. SUF ¶¶ 6-7; Defs. Ex. 3 at 3 ¶ 1. Plaintiff signed the application on

---

[1] Within its opening brief, Defendants submitted a statement of undisputed facts ("Defs. SUF"). In its opposition brief, Plaintiffs responded to Defendants' alleged facts ("Pl. SUF"), admitting to many of the alleged facts. Defendants responded to Plaintiff's responses in its reply brief ("Def. Reply SUF"). Statements which an opposing party "disputed" were deemed undisputed for purposes of this Motion if the party's explanation of the dispute was non-responsive or failed to reference supporting evidence in the record. See Fed. R. Civ. P. 56(c), (e).

September 2, 2009. Defs. Ex. 3 at 3.

In September 2009, Ottens hired Plaintiff as a full-time maintenance employee. Defs. SUF ¶ 2; Pl. SUF ¶ 2. In November 2009, Plaintiff became a "material handler," which required him to inspect inbound raw materials and to store and control raw materials to manage cross-contamination. Id. Ottens terminated Plaintiff from his employment on January 5, 2011, and paid him through that date. Defs. SUF ¶ 17; Pl. SUF ¶ 17. On February 7, 2011, Plaintiff filed the Complaint in this case (ECF No. 1).

During discovery, Defendants took Plaintiff's deposition. Defs. SUF ¶ 11, Deposition of Marcus Jones ("Pl. Dep."), Pl. Ex. C. During his deposition, Plaintiff was asked a number of questions about his criminal background. First he was asked if his answer of "no" to the question "Have you ever been convicted of a crime or a felony?" was accurate. Pl. Dep. at 30:10-14. Plaintiff answered yes. Id. at 30:15. Plaintiff was then asked whether he had ever been convicted of impersonating a public servant, recklessly endangering another person, or any crime. Id. at 30:16-17. He answered "[n]o, they were charges. They weren't convictions" Id. at 30:25-31:1. Plaintiff was then asked about the following charges: false alarms to agencies of public safety, impersonating a public servant, false reports to law enforcement authorities and recklessly endangering another person. Id. at 31:2-9. Plaintiff admitted those charges were brought against him. Id. at 31:10. When asked what happened, Plaintiff responded "[w]hat happened was I pleaded to – I pleaded guilty to false alarm, because – at the advice of my attorney, but I wasn't convicted." Id. at 31:17-20. Plaintiff then explained the circumstances that gave rise to the charges. Id. at 31:23-33:2. According to Plaintiff, at the time of the incident, Plaintiff worked for Philadelphia Housing Authority. Id. at 31:23-25. One day, at home, he saw someone trying to

steal his girlfriend's car radio. Id. at 32:1-4. After taking the thief down to the ground, he called

911, and stated he was an off-duty Housing Authority investigator in need of assistance. Id. at

32:9-12. The police later claimed that he had said "officer needs assistance." Id. at 32:16-19.

They were unable to find a recording of the 911 call. Id. at 32:20-21.

The following exchange then occurred in the deposition:

Q:     And did you have to appear in court on any of these charges?

A:     Yes, I did.

Q:     And it's your testimony that you pled guilty to one of them?

A:     Yes, it is.

Q:     And what happened to the other three?

A:    I signed a paper. My attorney advised me to plead guilty to the false alarm. I signed a

document saying that I plead guilty to the false alarm, to the charges, and that was it. That's all I

remember.

As far as – as far as the other charges as to what I remember, they weren't

supposed to be any – anything – convictions or anything like that.

I signed the paper saying that – the false alarm.

Q:     Did you serve time in jail?

A:     No never.

Q:     Did you have to pay any fines?

A:     No.

Id. at 33:5-24-34:1. Plaintiff was then asked about other charges, some of which Plaintiff stated

were thrown out as fabricated, and others which Plaintiff could not recall. Id. at 35:11-13; 35:14-

37:17, 37:18-24, 38:1-5.

Defendants submitted criminal docket sheets, with Plaintiff's name on them, from the Municipal Court of Philadelphia County, the Court of Common Pleas of Philadelphia County, and the Court of Common Pleas of Montgomery County. Ex. A to Def. Ex. 1. Plaintiff does not challenge the validity of these docket sheets, but rather states that the "docket speaks for itself." Pl. SUF ¶¶ 12-13. The docket sheets indicate a disposition of "guilty" in 2001 for false alarms to agencies of public safety (18 P.S. § 4905), impersonating a public servant (18 P.S. § 4906), false reports to law enforcement authorities (18 P.S. § 4906), and recklessly endangering another person (18 P.S. § 2705). Municipal Court of Philadelphia County Docket, Ex. A to Def. Ex. 1, at 2. The dockets also show a guilty plea in 1995 for unauthorized use of automobiles and other vehicles, in violation of 18 P.S. § 3928, and accelerated rehabilitative dispositions for various crimes in 1993. Court of Common Pleas of Philadelphia County Docket, Ex. A to Def. Ex. 1, at 6; Court of Common Pleas of Montgomery County Docket, Ex. A to Def. Ex. 1, at 10-12.

There are also some facts before the Court which the parties vigorously dispute. Defendants submitted two declarations from Robbin Nejad, Director of Human Resources at Ottens. Ms. Nejad states that she thought Aerotek, the temporary agency, performed a background check on Plaintiff, and therefore Ottens did not obtain its own background check on Plaintiff before hiring him. Second Declaration of Robbin Nejad ("Nejad Dec. 2"), Defs. Ex. A at ¶ 2. She also declares that "Ottens would not have hired Plaintiff or would have immediately terminated his employment upon learning of [Plaintiff's] convictions." Second Declaration of Robbin Nejad, Defs. Ex. 1 at ¶ 7. She further swears that "Ottens considers each employee's specific circumstances, including the nature of the individual's convictions and the position in

5

which the employee works or has applied, on a case-by-case basis." Id. at ¶ 5. Finally, she states

that "Ottens considers Plaintiff's convictions, including his convictions for making false reports,

related to his job duties as a material handler." Id. at ¶ 6. The material handler must "verify that

the company actually received the material ordered [including hazardous chemicals and known

allergens] . . . and truthfully report any deviations." Id. Moreover, the material handler must

properly receive, label, and store them or Ottens' products could be compromised or could fail to

meet certain food regulations and guidelines. Id. "In the Company's opinion," Ms. Nejad

declares, "conviction of a crime of making false reports reflects materially on the employee's

honesty. Given the nature of the duties of a Material Handler . . . it is the Company's position

that such a conviction would make an employee unfit for this position and would put the

Company at risk." Id.

    Plaintiff, on the other hand, submitted a certification stating that Defendants permitted

several non-black employees with criminal backgrounds to remain employed. Pl. Cert. ¶ 3.

Plaintiff describes three other employees who had criminal records who continued to work at

Ottens. One employee, called simply "Tet," whom Plaintiff states is Cambodian, was arrested on

drug and weapons charges and openly discussed the charges in the workplace. Id. ¶ 7. Another

employee, Joe Coniglio, whom Plaintiff states is Caucasian, had sex-crime charges brought

against him and Ottens management knew of this because they gave him time off for his court

appearances. Id. at 8. Kevin Byrd, whom Plaintiff states is Hispanic, was in prison for seven

years and Ottens knew of his criminal history. Id. ¶ 5. Plaintiff asserts that he himself is African

American and complained to Defendants of race discrimination, while none of these other

employees with criminal backgrounds are African American or made such complaints. Id. ¶ 10.

Plaintiff also submitted a criminal docket sheet from the Court of Common Pleas of Delaware County for "Kevin Byrd" which indicates Mr. Byrd pleaded guilty in 1993 to murder and robbery. Court of Common Pleas of Delaware County Docket, Pl. Ex. C. at 2-3.

As additional evidence that Ottens would not have terminated Plaintiff, Plaintiff provided a certification from Richard Davis, an African American who worked in the Ottens maintenance department for over a year. Certification of Richard Davis, Pl. Ex. B ¶ 2. Mr. Davis states that a Caucasian employee, Joey Cunningham, had a criminal conviction known to Defendants, but was not terminated. Id. ¶ 5. Mr. Davis also references Kevin Byrd, stating that he was Hispanic, spent seven years in prison, and informed Chuck Jones and Robbin Nejad about his convictions, but was not terminated. Id. ¶ 6. Mr. Davis also certifies that Ms. Nejad asked him to sign a paper stating that he was content working for Ottens and that there was no racial discrimination. Id. ¶ 7. Only when he refused to sign did Ottens perform a criminal background check on him and when Ottens discovered his criminal history, it terminated him. Id. ¶ 8.

In addition to raising hearsay objections, to counter Plaintiff's evidence regarding Mr. Byrd, Defendants submit a self-identification form completed by Mr. Byrd on which he checks the box "Black or African American (Not Hispanic or Latino)." Ottens Flavors, Self-Identification Form, Def. Reply Ex. 1 to Ex. A. Ms. Nejad also declares that Mr. Byrd did check "yes" to the employment application question about criminal convictions, but states that Ottens never performed a background check on him. Nejad Dec. 2 ¶ 4.

## III.    The Parties' Contentions

Defendants argue that under the doctrine of after-acquired evidence, Plaintiff's remedies should be limited to back pay from the date of his termination until July 14, 2011 when

Defendants learned of Plaintiff's criminal convictions during his deposition. Defendants assert that if Ottens had known of Plaintiff's criminal convictions, they would have not hired him or, if he had already been hired, would have terminated his employment. Defs. Br. at 7. They contend that it would have been legitimate for them to terminate Plaintiff's employment, and they would have indeed done so, because Plaintiff's convictions related to his position as a material handler. Id.

In response, Plaintiff challenges Defendants' argument that Ottens would have terminated his employment upon learning of his convictions. Plaintiff offers several arguments in support of this theory. First, he suggests that under the Pennsylvania Criminal History Record Information Act ("CHRIA"), in deciding whether to hire an applicant, employers can consider the job applicant's felony and misdemeanor convictions "only to the extent to which they relate to the applicants suitability for employment." Pl. Br. at 8 (citing 18 Pa.C.S. § 9125). Plaintiff contends that there is a question of fact as to whether Defendants could have and would have terminated Plaintiff upon learning of his convictions, because his "false alarm" charge is unrelated to his position as a material handler. Id. Plaintiff also argues that Defendants did not meet their burden in establishing that they would have terminated plaintiff. Plaintiff argues that the only evidence Defendants offer is the declaration from Ms. Nejad, and she is "an interested witness with a motive to fabricate." Id. at 9. Moreover, Plaintiff argues, Defendants did not perform a criminal background check of Plaintiff when they hired him, and Defendants have not pointed to any policies or procedures related to criminal convictions of employees. Id.  Additionally, Plaintiff points to his own evidence that Defendants did not terminate various "non-black employees with known criminal backgrounds," at least one of whom did not complain to Defendants about race

discrimination. Id. at 10. Plaintiff also argues that there is a question of fact as to whether Plaintiff's criminal conduct was so severe that Defendants would have terminated him on that basis. Id.[2]

In their reply brief, Defendants argue that Plaintiff failed to offer any evidence that Ottens would not have hired him or would not have terminated him. Def. Reply Br. at 4. Defendant contends that Plaintiff's and Mr. Davis's certifications constitute inadmissable hearsay, and moreover that Mr. Byrd, whom Plaintiff and Mr. Davis refer to as Hispanic, self-identified as African American. Id. at 5, 8. Defendant also maintains that the individuals whom Plaintiff claims were not terminated despite having criminal records are not meaningful comparators to Plaintiff, particularly because many of those individuals were arrested but not convicted and their alleged crimes did not involve dishonesty. Id. at 7. Defendant contends that Ottens makes employment decisions on a case-by-case basis, and that they need not have a written policy stating as much. Id. at 6. Defendants also reiterate that Ottens considers Plaintiff's conviction related to his position as a material handler, and consequently that terminating him would not violate CHRIA. Id. at 8-9. Defendants also explain that the reason they did not conduct an independent criminal background check on Plaintiff before hiring him was because they were under the impression that the temporary agency had already done so. Id. at 6.

**IV.    Legal Standards**

This Court has jurisdiction over Plaintiff's federal statutory claims pursuant to 28 U.S.C.

---

[2] Plaintiff also argues that evidence of Plaintiff's prior convictions are inadmissible under Federal Rule of Evidence 609(b). Defendants point out that Plaintiff's argument is misplaced, as Federal Rule of Evidence 609 relates to using convictions to attack a witness's character, whereas Defendants seek to use the convictions as evidence of an employment decision. Def. Reply Br. at 11.

§ 1331.

## V.   Standard of Review

A district court should grant a motion for summary judgment if the movant can show

"that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a).[3] A dispute is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the

suit under the governing law." Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial burden can be met simply by showing the district court that "there is an

absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S.

317, 325 (1986). The party opposing summary judgment must rebut by making a factual showing

"sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Id. at 322. The district court may grant summary

judgment "[i]f the evidence is merely colorable, or is not significantly probative." Anderson, 477

U.S. at 249 (internal citations omitted). Under Rule 56, the Court must view the evidence in the

light most favorable to the non-moving party and draw all justifiable inferences in favor of the

---

[3] Amendments to Federal Rule of Civil Procedure 56 became effective on December 1, 2010. The oft-cited summary judgment standard formerly found in Rule 56(c) is now located in Rule 56(a), with one alteration: substitution of "dispute" for "issue." Fed. R. Civ. P. 56(a). The Rules Advisory Committee explained that this alteration better describes the summary judgment inquiry but does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56 Advisory Committee's note.

Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 Supreme Court order approving the amendments, the amended version of Rule 56 governs all proceedings commenced on or after December 1, 2010, and all proceedings then pending, "insofar as just and practicable." Defendants filed their Motions after December 1, 2010. Accordingly, when necessary, the Court quotes the Rule's new language.

non-movant. <u>Id.</u> at 255 (citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).

## VI.   Analysis

When an employer terminates an employee on unlawful grounds, but then later learns of employee wrongdoing for which the employer could have legitimately terminated the employee, that employee's damages are limited. <u>McKennon v. Nashville Banner Publishing Co.</u>, 513 U.S. 352, 361-61 (1995).[4] In <u>McKennon</u>, the Supreme Court established this "after-acquired evidence" rule, holding that such evidence did not bar a plaintiff's relief completely, but would render the plaintiff ineligible for front pay and back pay beyond the date the employer discovered the wrongdoing. <u>Id.</u> "It would be both inequitable and pointless," the Supreme Court explained, "to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." <u>Id.</u> The Supreme Court also provided the standard for making out an after-acquired evidence claim: "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." <u>Id.</u> at 362-63. The Third Circuit has underscored that this is indeed defendant's burden. <u>Mardell v. Harleysville Life Ins. Co.</u>, 65 F.3d 1072, 1074 n.2 (3d Cir. 1995) (on remand from the Supreme Court following <u>McKennon</u>).

As explained above, Defendants argue that Plaintiff's damages should be limited to back pay up until the date of his deposition. The docket sheets, which Plaintiff does not contend are

---

[4]The Supreme Court did leave open the possibility that "extraordinary equitable circumstances" might affect the rule. <u>McKennon</u>, 513 U.S. at 362. The Third Circuit has declined to describe the circumstances that might qualify, <u>Mardell v. Harleysville Life Ins. Co.</u>, 65 F.3d 1072, 1074 & n.4 (3d Cir. 1995), and Plaintiff does not argue that any apply here.

inaccurate or inauthentic, demonstrate that Plaintiff has been convicted of at least one crime.

Based on the statement in Ottens's employment application that misrepresentations on the form

would be grounds for termination, coupled with Ms. Nejad's declarations that Ottens considered

Plaintiff's false alarms conviction "related" to his position of a material handler, it is clear Ottens

could have terminated Plaintiff upon learning of his convictions and subsequent

misrepresentation on the employment application.

The critical question here, on a motion for summary judgment, however, is whether, as a

matter of law, Ottens carried its burden in establishing that it would have fired Plaintiff. Bullock

v. Balis & Co., Inc., No. 99-748, 2000 WL 1858719, at *9 (E.D. Pa. 2000) (Kelly, J.). This test

would require the Court to conclude that a reasonable jury could only find that Ottens

unequivocally would have terminated Plaintiff upon learning of his conviction.

There appears to be little relevant precedent in this Circuit on this topic.[5] Whether the

after-acquired evidence defense presents a genuine issue of material fact is case-specific. In

Gorman v. Meeder Financial Services, Inc., No. 04-599, 2007 WL 1657188 (D.N.J. 2007), Judge

Wigenton denied summary judgment on this issue. Id. at *9. There, Defendants argued that they

would have fired the plaintiff based on his working for a competitor, in violation of the

---

[5] Some of the more recent cases in this Circuit that discuss after-acquired evidence are distinguishable as involving misconduct that occurred after the Plaintiff was terminated or as involving misconduct of which the employer knew before terminating the plaintiff, both of which trigger a different analysis. See Delli Santi v. CNA Ins. Co., 88 F.3d 192 (3d Cir. 1996), McKenna v. City of Philadelphia, 636 F. Supp. 2d 446 (E.D. Pa. 2009), Smyth v. Wawa, Inc., No. 06-4474, 2008 WL 741036 (E.D. Pa. March 19, 2008. Moreover, Mardell v. Harleysville Life Ins. Co., 65 F.3d 1072, 1074 & n.4 (3d Cir. 1995) (reaffirming Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221 (3d Cir. 1994) on all but one ground) , which was decided by the Third Circuit on remand from the Supreme Court after McKennon, merely reiterates the correct standard for the after-acquired evidence doctrine without applying it.

company's non-compete agreement, while working for Defendants. Id. at *5, 8. Despite the company owner's statement that he would have fired plaintiff for this reason, Judge Wigenton found "insufficient evidence in the record" to "support a finding that Defendants would have unequivocally fired Plaintiff." Id. at *8-9. In contrast, Judge Kelly in Bullock found that the defendant company met its burden under the after-acquired evidence doctrine by presenting two depositions that "resume fraud," which the plaintiff there allegedly committed, was grounds for discharge. 2000 WL 1858710 at * 9. Because the plaintiff did not discredit the depositions or provide other evidence, Judge Kelly found the depositions sufficient to prove the company would have fired the plaintiff. Id.

Here, there are at least two pieces of evidence that support Defendants' claim that it would have terminated Plaintiff upon learning of his convictions: (1) the statement on the employment application that misrepresentations are grounds for not being hired or for being terminated, and (2) Ms. Nejad's two depositions that Ottens considers Plaintiffs' convictions "related" to his job as a material handler, and therefore would have discharged Plaintiff upon learning of them.

Nevertheless, there are various genuine disuptes of material fact. First, from Plaintiff's deposition, Plaintiff was confused about the meaning of "conviction" as it related to his guilty pleas and other criminal history terms. A lawyer knows that pleading guilty results in a conviction but a lay person does not necessarily equate the two. If Plaintiff genuinely misunderstood the question on the application form, and explained his confusion to Defendants, Ottens could not have considered Plaintiff's misrepresentation a knowing one. A reasonable jury could find that Ottens therefore would not have terminated Plaintiff based on his undisclosed

13

conviction. Moreover, in view of Plaintiff's description of the conduct giving rise to his false alarms charge—potentially as simple as a misunderstanding between Plaintiff and the 911 operator—a reasonable jury could conclude that Plaintiff was not at fault, an/or that Plaintiff's conviction was not particularly severe, and thus that Ottens would not have terminated Plaintiff upon learning of his conviction.

The relationship between the conviction and the job as a material handler raises another factual question. It is not obvious that a false alarms charge relates to job duties including receiving, labeling, and storing raw materials properly. Rather, a reasonable jury could find that Ms. Nejad's explanation as to why the conviction was "related" was not credible, and indeed concocted during litigation in Defendants' attempt to limit Plaintiff's remedies in this case. Plaintiff's description of the conduct that led to the false alarms charge bolsters this conclusion. A jury would be entitled to find that Plaintiff pleaded guilty on the advice of his lawyer even though on the day of the incident he told the 911 operator that he was an off-duty Philadelphia Housing Authority investigator, and not "officer needs assistance" as was charged, and that Ottens consequently would have considered his conviction irrelevant to his position as a material handler.

Plaintiff's argument that the fact Ottens did not perform a criminal background check on him is mitigated by Ms. Nejad's explanation that Ottens assumed the referring temporary agency performed such a check. A material dispute of fact on this point emerges, however, with Mr. Davis's certification that Ottens did not perform a background check on him until he complained of racial discrimination, and Ms. Nejad's statement that Ottens never performed a background check on Kevin Byrd despite his answering "yes" to the application question about convictions

14

(although again this is somewhat mitigated by her explanation of the expected role of the referring agency).

Plaintiff's claims that Ottens did not fire individuals with criminal backgrounds who were of other races and did not complain of race discrimination present the most significant factual question. Although Defendants might be able to convince a jury that these individuals are not proper comparators, that the individuals were African American and/or did complain of race discrimination, or that the criminal convictions of those individuals were not known to Ottens, Plaintiff has at least raised a genuine dispute of material fact. As to Defendants' argument that Plaintiff's and Mr. Davis's certifications, which provide the only meaningful for support for this argument, constitute inadmissible hearsay and thus cannot be used in support of Plaintiff's opposition to summary judgment, the Court agrees with that legal principle. See Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). However, there are other genuine disputes of material fact, as set forth above.

**VII.    Conclusion**

For the foregoing reasons, the Court DENIES Defendants' Motion for Partial Summary Judgment. An appropriate Order follows.

O:\CIVIL 11-12\11-911 Jones v. Henry H. Ottens Mfg\Jones Memo SJ.wpd